Oh, I see Mr. Wallace and Mr. Willenberg. Good morning gentlemen. Mr. Wallace, I believe you represent the appellate, so please proceed. Thank you, Your Honor. Good morning. Guy Wallace for plaintiffs and appellates. May it please the court. The issue presented is whether plaintiffs have pled sufficient facts to be excused from individuals with disabilities Education Act exhaustion requirements. The judgment must be reversed because under Rule 12 v. 6 we have pled facts that are sufficient to excuse exhaustion under each of the three recognized exceptions to the requirement. This court has held that plaintiffs are not required to exhaust administrative remedies if the school district has adopted a policy or pursued a practice of general applicability that is contrary to law. While here we challenge three specific unlawful policies and practices of general applicability, we allege that these policies and practices apply throughout the San Francisco Unified School District to all of its schools and to its entire special education. Counsel, let me just cut in for just a minute here. What I'm struggling with here is the CRP process is one that would enable you to deal with all of this. You think they need to do, but you've not gone to the state, you've not presented this as a systemic problem. Isn't that the very kind of thing that the exhaustion requirement was designed to prevent? Your honor, with respect to the CRP process, the thing is, the idea requires that if exhaustion is necessary, you do that through the state due process hearings with the office administrative hearings. Now, if you're not required to go to OAH because you need one of the three exceptions as we claim, but you're, you're, you're kind of assuming that's the problem, then you don't have to go to CRP. But what I'm, what I'm struggling with is you bear the burden of proof to show that you meet one of the exceptions to do away with the requirement that you exhaust your remedy. You clearly have not exhausted your remedy. So you agree with that? Yes. Okay. So you have to fit with one of the exceptions and you burden of proof, bear the burden of proof to show your say, it's under the, under the part two of Paul G, which my colleague, Doug Schroeder wrote, I think, which says that you have to show that the claim arises from a policy or practice of general applicability that is contrary to law. That's what you're hanging your hat on, right? Well, we think we need all three exceptions. Oh, really? Okay. We challenge policies and practices of general applicability that we believe are unlawful. And the first of those is the district policy and practice of denying or delaying the identification and evaluation of children with suspected disabilities. The second is the policy and practice of providing standard form IEPs instead of IEPs that are tailored to the individualized of the students. And the third is its policy and practice of imposing arbitrary limits on the quantity of special education services. The key issue in this case is, are those three policies and practices unlawful? And they are. This, this court has held that you can't provide a free, appropriate public education to children without first identifying them and Timothy O. And the district has... Counsel, under that second exception, the one that Judge Smith was referring to, and I think you're arguing all three, but even if you are arguing that something is contrary to law, a policy or practice contrary to law, as I understand that exception, you still have to show that the purposes of by, in other words, sort of, if the court thinks that, well, if you'd actually gone and exhausted it, it would be helpful to us. We would have more information, et cetera. Then you still need to exhaust. Would you agree that that's correct? That is in heft, your honor. I'd say that again? That, that, that, what you just stated is in heft. Is correct. In a heft decision. Yeah. And in DOE also, I think, right? And in DOE also. So, so, I mean, that's a, can you, can you address that? Because I, it seems like, and this kind of goes back to what Judge Smith was asking you earlier. I understand your point that you don't have to do the, the CRP process. Right. But we have said that you can do the CRP process in lieu of the OAH process, right? Which you do have to do unless you mean, unless you mean exception. So doesn't that mean that if having gone through the CRP process would, would have created a nice record for us that we could use, doesn't that mean that, that you, that gives you a problem under that second prong, doesn't it? We don't believe so, your honor, because we, we believe we meet the three exceptions. And with respect to what takes place at OAH, which is the statutorily mandated avenue that we look at in determining whether we must We know, and the cases are cited at pages 44 to 56, 44 to 46 of our opening brief. Those are the OAH decisions where they talk about, OAH talks about what their jurisdiction is. They do not hear multi-party cases. They do not hear systemic claims. They do not hear cases that attack on lawful policies and practices. By statute, their jurisdiction is limited to a particular child in front of them. And his or her IEP. And so, I'm sorry, I think your position is just that, because some of those things you can't, at least some or all those you can do through the CRP process. But I think your position then is that CRP is just completely irrelevant. That's your position. It sounds like is that CRP is completely irrelevant, even though you had the option of doing that. That's completely irrelevant, specifically with regard to whether or not if you had gone through the CRP process, it would have helped create a record for us that would help us in this litigation. Our position is that CRP is optional. OAH is mandatory, unless you need one of the exceptions. Because the OAH jurisdiction is limited to a particular child, you cannot get fact-finding from OAH about whether there is an unlawful policy or practice. If so, what is its scope and its application in the district? How have those policies and practices affected the class members? Are they lawful and what the relief might be? Those are the key questions in this case. Counsel, I want to understand the case a little better. What is the remedy that you're seeking here? The remedy we're seeking are new policies and practices for the district that will enable them to identify children with suspected disabilities far earlier so they meet the CDE and IDEA standards for doing that, which is basically 60 days. It's a tight standard. Then we want an injunction in joining the district from using standard form IEPs and in pointing them in the directions firmly of you've got to do a tailored IEP like the Supreme Court says is required. And then a mandatory injunction, excuse me, a prohibitory injunction prohibiting the school district from using predetermined caps or budget-based limits on particular types of special education services. And those injunctions would apply throughout the school district. It's structural relief. I understand. Okay. Thank you. Now, who are your clients? Who are the students that you, what is the nature of their disabilities that you're representing? Oh, they have a range, your honor. Some of them are autistic. Some of them have dyslexia or other learning disabilities. And for that reason, there's a diversity of accommodations that they need. And those are their conditions. Have none of them been through any hearing process? They have not. And our view on that is, you know, Congress and appellate courts have indicated that if you fall for one of the exceptions, the name plaintiffs do not exhaust. I understand that. But the district court said he would really be helped by having records here. And it's hard for me to visualize how you're going to show that they're using cookie cutter IEPs if you haven't, if none of your clients have one. Our clients have IEPs. And at OAH, you can find out whether those IEPs are right for that particular child. But because of the limits on their jurisdiction, your honor, they're not going to inquire into what caused the problem with the IEP and what's going on with other children. They're going to behave the same way with respect to all these students, isn't that your? Yes. Okay. But you don't have a record that shows that. That's what seems to me, that's what was troubling the district court. Well, I think we are at 12B6, your honor. So our allegations are facts. No, I don't have a record in the district court. I mean an administrative record. Yes. And the administrative record would simply be whether or not these particular children had a sufficient IEP for them. The OAH is not going to conduct an inquiry into whether there is any policy or practice based cause of any defects in their IEPs. So you can't really learn anything from OAH here. And therefore, and we can't get remedies from OAH that are system wide. So that's why we need the second exception, which is, is there adequate remedies available at OAH? And there is not because they don't take jurisdiction of multi-party claims. They only look at each child in isolation and they don't do fact finding or relief about unlawful policies and practices. Okay. So in the district court, what kind of record do you contemplate making that is going to show all of this? Well, I think we're, we're, we are hoping to be allowed to undertake some discovery, your honor. And as part of that, we're going to do some discovery into any sort of guidance documents or memos or emails from school district administrators, you know, that, that, that direct limited offers of accommodations to be made in the first instance. Let me ask, let me ask you this. Can you cite any case in any circuit that has allowed plaintiffs to do what you intend to do where we're trying to do in this case? The class action, basically seeking a system wide change, basically in the school district. Your honor, there are several and they're in our opening brief. DF versus Columbia, JS, JG in the second circuit, Jose P versus Ombak in the second circuit, a New Mexico association of retarded citizens in the 10th circuit. So those are five that we cite and there are others. And basically what those courts said is, look, you know, administrative remedies, you're not going to get much benefit from due process hearings where you're just looking into the situation of particular children, where the focus of the case is on, is there a sweeping unlawful policy or practice? And in your opinion, the cases that you cite are like this case in every respect. They're similar, your honor. They involve delayed or failure to identify kids. They involve situations in which school systems are offering individually tailored IEPs and other challenges that are systemic. So they are quite analogous. What's the nexus between the statistics that you cite and the alleged failures of the San Francisco school district? Our allegation is that the districts on lawful policies and practices cause those outcomes, your honor. That is why those are taking place. That is why the rate for non-graduation is double for disabled versus non-disabled. That's why kids with disabilities only have, you know, half of them don't meet the state's minimum standards for functionality in math and English and only 14% are ready for college. Okay. Do you want to save any of your time? I want to save the rest of my time, please. Okay. Very well. Okay. Mr. Willenberg for the school district, please. May I please the court, Don Willenberg of Gordon-Reese for the school district. This is an unusual case in that both sides want the same thing. The district too wants these students and all other disabled students to get a free appropriate public education. When there's a dispute about whether students get that, the way to achieve that says Congress and this court in Doe, in Heft, in Paul G is through an administrative process through state and local agencies with expertise, not filing a lawsuit as the first resort. Especially whereas here the suit doesn't present legal issues so much as questions about the adequacy of the educational measures taken. The complaints are about identification, evaluation, and placement. Just the three things that that section 1415 says have to be, have to go through the administrative process. These are all issues about forward Congress design the process and each one needs expert knowledge. I'll pick a few examples from the portions of the complaint. Um, ER 173 to 189 that addressed the specific problems with these students. Does an autistic student require a one-on-one paraprofessional for purposes such as object manipulation or to help him sing and dance at the same time? Does a student need occupational therapy or physical therapy or both? Is a student autistic or does the student have a speech delay? Is a student denied a free appropriate public education if the student doesn't get all the resources called for her in her IEP? Those are questions that don't require courts involvement. Those are questions that require educational expertise. Counsel, I, I get your point clearly on, on the issue of you're wanting a FAPE for every student as well. In this case, how could the administrative process achieve an across the board change for, for example, child finds offer of services and provision of services for all students with disabilities in the individualized consideration in the administrative system? I would say two things to that, your honor. One is we haven't, there's no particular policy identified in the complaint. There is just the notion that, well, since these plaintiffs encountered problems, there must be a policy or practice out there somewhere. Well, they have statistics, don't they, counsel? They have statistics that they cite too, don't they? But as I recall. Well, the statistic is, is about, is about whether or not the school is performing as well as, as one would like. But that's not, that's not a reason to excuse exhaustion. That's, that would be saying that every time there's a complaint about an underperforming school district, that she wouldn't need administrative exhaustion, but those are just the situations where we most need educational expertise and where the hearing process has the most benefit. But that, that gets me back to my question. How in the administrative process can you achieve a system-wide change? Well, let me put the question a little differently. If you were your opponent, and this is a laugh at this, but if you were your opponent, how could you frame a complaint? Did we get them what they're looking for? How do you get around the administrative hearing requirement? If I were my opponent, I wouldn't have tried to get around the administrative hearing requirement. I would have taken advantage of the administrative process to develop such facts and such a record as I could. And if that did not give, give me an enough relief, then I would proceed to, to sue. Okay. So basically, your, your position is that there is no way for plaintiffs in this case, even though they're looking for a systemic change to avoid the administrative process, not only because that's what the law requires, but they, you can't, just can't get there. Is that right? What they've alleged here is just the kind of things that this court had previously held are not systemic. And that many other courts have held are not systemic. Some of the cases that council was, was, was talking about, which aren't from this district or for the circuit, involve very different situations. They involve challenges to the way that the hearing officers are selected. There was the JG case. There was a failure to evaluate and place students, a failure to develop IEPs and a failure to inform parents of their rights. Well, none of that's alleged here. These students were evaluated. They were placed. They did have IEPs. Parents disagree with whether those came in were timely or adequate. And that's what the process is about. To follow up on, oh, go ahead, Judge Schroeder. Well, would all of the students have to exhaust? Pardon me? How do you do a class action and change procedures? If, if, if, if you seem to be arguing all of the students would have to exhaust? Well, the students, the students exhaust those procedures and then they allege in their class action complaint, see, we exhausted and the state wouldn't provide us the relief. And that's the complaint. What kind of relief counsel could, could a, it could be provided through the CRP proceedings, putting aside whether or not that's required or not. But, but if through the CRP, if I was, as I understand it, it doesn't even have to be a student that brings a CRP procedure. Right, right. You get more systemic relief through a CRP proceeding. I don't know that the, pardon me, Your Honor. I don't know that the result of the procedure would automatically be a, you want to call it a district-wide ruling. But I will add that this is, that this does, again, provide some of the benefits of exhaustion, the purposes of exhaustion by putting the district on notice and giving the district an opportunity to correct the problem. There wasn't that here in this case. Let me, let me, let me flesh that out a little bit. I'm really trying to get more detail on what this year. So you can bring, you could challenge some sort of class-wide, like I'm not getting my IP fast enough and not just me, but others are not getting, not just my, my child, but is that right? Could you challenge that through the CRP process? That, that, that a group of the students, all the students, whatever. I think that, I think that's right, Your Honor. So then what would they, what would they rule on that? Well, I don't know how the process works. Well, it sounds like you're saying they couldn't issue an injunction telling the school district, you need to do X and Y, but what, what would, what would they get if they brought something like that? I guess I'm not certain of the answer to that question in part, because we never know. We never got to the CRP or the OAH in this case. Is this, is this case, I don't know whether you're familiar with this particular law, but then in California, we've got the Department of Fair Employment and Housing. If you want to go to court, you got to go to the Department of Fair Employment and Housing and claim relief. They can, they can say, we don't want this case. They give you a right to sue. Then you go to sue. Is this analogous to that in your judgment? Yes, other than the, than the right to sue letter. Right, right. No, I understand that. But I mean, going through the administrative process gives you the right to sue. Without that, you can't file a class basis. Right. I'll just point out again that simply asking for class-wide or injunctive relief has never been held to be enough to excuse failure to exhaust. Well, let me just make sure I understand that there are five, as I recall, there are five students here. It's a ABCDE, yeah, six. Right, six. All right. So your position is that each one of them should exhaust individually or file a CRP complaint, but they have done neither. Correct. And that once they do that, that they can proceed. If they had done that, they could proceed with a class action complaint in district court for injunctive relief. Yes. And there may be other defenses. Right, there may be. That was the only thing I didn't hesitate. You know, I always want to say, no, you can't file a class action complaint. But yeah, so that would, that would, that would be true. Yeah. Okay. Well, Councilor, going back to your, so I'm looking at your brief on page 57, and you said that if somebody brought a CRP action, they could allege a facial violation of IDEA, you know, into what the allegations here are. And then you said doing so would allow the state to correct any facial violation by SFUST by the district. But, you know, now I'm trying to get more understand better how, how so, you know, you just say it, but I don't know, like, are they, you know, let's say the state, let's say this, this CRP process was brought, and they said, yeah, you're right. We're not doing this, you know, the district, you know, they end up the, through the process, they end up saying, yeah, you're not doing this right. I'm trying to figure out, like, what is the upshot? It seems like under our case law, once they did that, they would be able to bring a lawsuit. So that's one thing. I'm trying to figure out, like, how that would help our court. Like, what kind of record does it create? Maybe even prevent them from having to bring a lawsuit because the district would actually be forced to change or voluntarily change. I don't know. Voluntarily change, which is sort of, I guess. Is that all though? Is that what I'm trying to, so it says correcting. So basically it's sort of optional. You bring this and then you say, you've got the, they identify these things you did wrong. And then the school district gets to decide whether they're actually going to implement changes. And then I guess if they don't voluntarily do that, then now they've exhausted and they can sue. Well, but isn't that just of the function of. No, I'm not. I'm just asking, is that how it works? It's only so that the CRP process basically ends in sort of a, not a binding thing on the district, but more of a recommendation to the district. So in either way, plaintiffs should follow that procedure. They should, they can follow one or the other. I heard them saying, well, the CRP isn't really relevant because the court hasn't ever required that for exhaustion. And that's true, but that's like saying, well, I give you one chance and I give you another chance. And they say, well, neither of those are good enough. So I'm not going to go either way. They had two chances to exhaust and didn't do it for any one of the students. Didn't develop a factual record for any of them. Didn't decide that they are in fact being denied or that there's this problem with their education. And then try to either broaden from that to an understanding of what's the supposed policy or practice is, or to actually learn that, well, no, there isn't a policy or practice that's causing this. These are problems with the placement and systems for individual, I'm sorry, not systems, the placement and programs for individual students. There's no, that's what the process is for. And they should have done it and didn't. The exceptions to exhaustion are intentionally narrow. There are few cases that, to Judge Smith's earlier comment, there are few cases that find an exception in that case. And that's because, precisely because, administrative exhaustion is the rule unless plaintiffs can show an exception and they did not plead that in their complaint. And that's why this court should affirm. I yield the balance of my time to Mr. Wallace. Very well, thank you, Mr. Wallenberg. Mr. Wallace, you have a little bit of time here for rebuttal. Okay, the first point I wanted to make is just finishing up on what Judge Van Dyke was asking me about earlier, which is Porter versus Board of Trustees from this court directly addressed that the CRP is required and rejected that. Now, it is true that the CRP process cannot give us systemic injunctive relief. We also know, as one- Counselor, did you say can or can't? I'm sorry. Cannot. Cannot? Cannot, Your Honor. So what happens then? Is it just basically give a recommendation? Is that what the upshot of the, when you're done with the process? Yes. We are not aware of any systemic injunctive relief being imposed through that process. And let me also point something else out. The CDE is the one that creates the statistics that we cited, and they are well aware of the systemic problems within San Francisco Unified, and over the years have not done anything to change the district's policies and practices. We would not consider the CRP to be a remedy process that would provide any hope of a binding systemic change to the district in this case. Now, that is critical to remember because I want to emphasize to the court that the main plaintiffs here do not seek individual injunctive relief regarding their own IEPs. They are here as true class representative Rule 23, B2 style plaintiffs who want to see systemic sea change for the district. And you can't get it from OAH. You can't get anything binding from a CRP. And the truth is we'd be much better off in district court because the key issues in this case are about the lawfulness of the district's policies and practices. Counselor, do your plaintiffs have standing if they're not looking for any relief for themselves? Oh, yes, they have standing, Your Honor, because they're trying to change the district policies and practices. And what goes on as a practical matter, what goes on is IEPs come out every year or two, right? So even if their current IEP is okay, they are still under threat of having problems in a year or two when they go through the next IEP because of these policies and practices about not tailoring the accommodations and being subjected to predetermined caps and limits. Very well. As you know, you've gone over your time, but I'm going to ask my colleague whether either has additional questions for Mr. Wallace. Very well. Thank you, gentlemen, for your argument. We appreciate it. The case just argued, Student Day versus San Francisco Unified School District at all is submitted. And the court stands in recess until tomorrow at 9 a.m. Thank you, Your Honor. Thank you.
judges: Schroeder, M. Smith, Vandyke